# MABEL L. SMITH v. RESERVE LOAN LIFE INSURANCE COMPANY et al., Appellants.

Division One, March 30, 1916.

1. **TENDER: Draft or Order.** A tender of bank notes, checks or drafts or orders for the payment of money, if not objected to for failure to produce legal tender money, is a legal tender in payment of a private debt.

2. ————: ————: **Implied Waiver.** The creditor, if he objects to a payment in bank notes or such things as represent money in the marts of trade and commerce, should put his refusal on that ground, and if he suppresses his objection at the time the offer is made, he is estopped from subsequently making the objection, if his later insistence thereon would inflict a loss or damage upon his debtor who in reliance upon his implied waiver failed to produce the kind of money made legal tender by law.

3. ————: ————: ————: **Submitting Issue to Jury.** The facts stated in the opinion authorized the trial court to submit to the jury the issue of implied waiver of a tender of actual money.

4. ————: **Evidence: Telegraph Order: Bankable Paper.** Testimony that a telegraph money order, tendered by the company's agent to an insurance company in payment of a premium note, is bankable paper in the sense that the banks of the town would put it to the credit of the holder and permit him to check out the amount thereof, is competent evidence, where the sufficiency of the tender of such order is the issue in the case.

5. ————: **Telegraph Money Order.** A telegraph money order drawn by the cashier of the sendee office of the Postal Telegraph-Cable Company upon its treasurer in New York is equally as satisfactory and trustworthy in the payment of debts as bank drafts or individual checks.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

AFFIRMED.

*Guilford A. Deitch, Ed. E. Yates* and *Perry S. Rader* for appellants.

(1) The Postal Telegraph-Cable Company "was bound to deliver to appellant the money," not its check, nor a draft, nor an order on itself. Robinson v. Tel. Co., 24 Ky. L. Rep. 456; Tel. Co. v. Gougar, 84 Ind. 178.    (2) The order drawn by "C. Fred Knight, Money Transfer Agent," at Indianapolis, directing the "Treasurer of Money Transfer Department Postal Telegraph-Cable Co." at New York to "pay to the order of Reserve Loan Life Insurance Company $595.40," was not negotiable, was not a check or a bankable draft, and it is very doubtful if it had any bankable or negotiable quality unless and until accepted by the treasurer in New York, either in his own name or in such way as to bind the telegraph company.  (a) It was not negotiable because it was expressly made payable out of a particular fund; "and charge same to account of Money Transfers." School Township v. Andress, 56 Ind. 163; McGee v. Larramore, 50 Mo. 427; 1 Daniel on Negotiable Instruments (6 Ed.), sec. 50; Richardson v. Carpenter, 46 N. Y. 664; Hoagland v. Erck, 11 Neb. 580; Hannay v. Trust Co., 187 Fed. 686.    (b) It was not a bank draft because it was not drawn by one bank upon another bank.  (c) It was not a check because not drawn on a bank.  2 Daniel on

Negotiable Instruments (6 Ed.), secs. 1566, 1568; Bank. v. Bank, 10 Wall. (77 U. S.) 647; Hawley v. Jette, 10 Ore. 34. (d) It was not a bill of exchange: Because it was not drawn on the general funds of the Postal Telegraph-Cable Company, but against the money in "Money Transfer Department." Espy v. Bank, 18 Wall. (85 U. S.) 152; Wood's Byles on Bills & Notes, sec. 1; Daniel on Negotiable Instruments (6 Ed.), secs. 27, 29. It was not a bill of exchange of the Postal Telegraph-Cable Company because it was not signed by such company or by any person in its name, and does not purport to be drawn by it or for it. It could not have been enforced against said company, if accepted by defendant, and resisted by said company. 7 Cyc. 549 (e); Wood's Byles on Bills & Notes, sec. 1; Daniel on Negotiable Instruments (6 Ed.), secs. 27, 29; Bank v. Hooper, 71 Mass. 567; Crum v. Boyd, 9 Ind. 289; Snow v. Goodrich, 14 Me. 235; Stackpole v. Arnold, 11 Mass. 27, 29; Banking Co. v. Van Antwerp, 51 N. Y. Supp. 812; Pentz v. Stanton, 10 Wend. (N. Y.) 271; 1 Am. & Eng. Ency. Law (2 Ed.), 1047 (5); Bank v. Anderson, 32 Pac. (Cal.) 168; Freman's Note, 48 Am. St. 919; McClellan v. Robe, 93 Ind. 298; Bank v. Steel Co., 155 Ind. 581. The order unless accepted by the Postal Telegraph-Cable Company, or by its treasurer in New York, or at least by "the Treasurer Money Transfer Department Postal Telegraph-Cable Company, 253 Broadway, New York," could not have been enforced as a legal demand against said telegraph company. The liability of the drawee on a bill begins with its acceptance. Reilly v. Daly, 159 Pa. St. 611; McGinn v. Bank, 131 Pa. St. 364; Bank v. Bank, 69 Ind. 480; Marriner v. Lumber Co., 113 N. C. 52. (3) "A bill of exchange is not money in any sense, and is not made a legal tender by any statutory enactment."

Ins. Co. v. Clark, 41 Ind. App. 351; Goss v. Bowen, 104 Ind. 209; Boyd v. Olvey, 82 Ind. 298. (4) Even if the transfer order had been received by defendant it would not have been a payment of the note unless at the time it was accepted there was a positive agreement that it was being accepted as full payment and satisfaction of the debt. Appleton v. Kennon, 19 Mo. 637; Howard v. Jones, 33 Mo. 583; Wiles v. Robinson, 80 Mo. 47; Commisky v. McPike, 20 Mo. App. 66; Holland v. Rongey, 168 Mo. 16; Way v. Caddell, 82 Mo. App. 144. And the same is true even though the telegraph money order be considered a check or draft. Johnson-Brinkman Coms. Co. v. Bank, 116 Mo. 570; Hall & Robinson v. Railroad, 50 Mo. App. 183; Prewitt v. Brown, 101 Mo. App. 259. A payment other than in money necessarily rests upon an independent agreement. Moore v. Renick, 95 Mo. App. 643; Rider v. Culp, 68 Mo. App. 531; Ulsch v. Muller, 143 Mass. 379. The giving and accepting of an order for prior indebtedness will not be regarded as payment thereof unless there be an express agreement between the parties to that effect. Farwell & Co. v. Salpaugh, 32 Iowa, 583; Railroad v. Burns, 61 Neb. 794; Estey v. Birnbaum, 9 S. D. 175; Cliver v. Heil, 95 Wis. 365. (5) If the order signed by "C. Fred Knight, Money Transfer Agent," is considered the obligation of the Postal Telegraph Company, the drawer and drawee were one and the same person, or a bill drawn by the drawer upon himself (if the "Treasurer of Money Transfer Department" can be considered the company); and such an order is in effect the promissory note of the drawer or telegraph company or of Knight, and defendant was entitled to consider it as a promissory note and nothing more. Railroad v. Davis, 20 Ind. 8; Road Co. v. Branegan, 40 Ind. 362; Board

of Commissioners v. Day, 19 Ind. 452; Railroad v. Dillon, 7 Ind. 405; Fairchild v. Railroad, 15 N. Y. 340; Haney v. Beet Sugar Co., 1 Dougl. (Mich.) 197; 1 Daniel on Negotiable Instruments (6 Ed.), sec. 424; 1 Parsons on Bills & Notes, p. 63; Randolph v. Parish, 9 Port. (Ala.) 76; Poydras v. Delmare, 13 La. 98. If defendant was entitled to treat said order as a promissory note, then it was no tender. It was not money, or "that which by common consent is considered and treated as money." One promissory note is not a legal tender in payment of another, unless expressly agreed to be accepted as such. Holland v. Rongey, 168 Mo. 16; Keyser v. Hinkle, 127 Mo. App. 75; Bradway v. Groendyke, 153 Ind. 508; Ins. Co. v. Chappelow, 83 Ind. 429.

*Edward L. Scarritt, Constantine J. Smyth, Ed. P. Smith* and *W. A. Schall* for respondent.

(1) There was no error in admission of testimony. Supreme Tent v. Fisher, 90 N. E. (Ind.) 1044; Berthold v. Reyburn, 37 Mo. 587; Land Co. v. Moody, 198 Fed. 7; Breed v. Hurd, 23 Mass. 356. (2) The burden of proof was on the defendants. Harris v. Insurance Co., 248 Mo. 317; Crenshaw v. Insurance Co., 71 Mo. App. 52; 25 Cyc. 925-927; Life Assurance Society v. Cannon, 201 Ill. 250. (3) The facts show that the insured made a good tender of the amount due upon the premium note with interest, within the time provided in the note. (4) The tender made was sufficient in law. Willcotts v. Ins. Co., 81 Ind. 300; Mathews v. Modern Woodman, 236 Mo. 344; Halsey v. Insurance Co., 258 Mo. 662; Graham v. Ins. Co., 62 Atl. (N. J.) 681; Beatty v. Miller, 94 N. E. (Ind.) 897; Gradle v. Warner, 140 Ill. 123; Kitchell v. Schneider, 103 N. E. (Ind.) 647; Gunby v. Ingram, 36 L. R. A. (N. S.) 232; Edmonds E. C. Company v. Kilpatrick, 166 Mo. 262; Potter v.

Schafer, 209 Mo. 586; Schaeffer v. Coldron, 85 Atl. 98; Bristol v. Mente, 80 N. Y. S. 52; McGrath v. Gagner, 77 Md. 331; Bonding Co. v. Bruce, 13 Ind. App. 550; Cox v. Hayes, 18 Ind. App. 220; Mahon v. Waters, 60 Mo. 170; McMahn v. Insurance Co., 128 Fed. 388.

## OPINION.

### I.

BOND, J.—This is a suit on an insurance policy taken out by Frank H. Smith on November 11, 1909, in favor of his wife, Mabel L. Smith, the respondent herein, in the sum of $10,000 in the Reserve Loan Life Insurance Company, upon payment of the first annual premium thereon of $732.

On the 11th day of November, 1910, when the second annual premium became due, the said Frank L. Smith was unable to pay the same and applied to the defendant company for an extension of time; to-wit, to the 11th of February, 1911, which extension was granted by said defendant company, in consideration of which the said Frank L. Smith paid to the defendant company the sum of $108.93 in cash and sent the defendant company one of the coupons mentioned in said policy for $36.60, and executed an extension premium note for $595.40 payable on February 11, 1911, providing that if said note be not paid upon maturity the policy shall be without notice null and void.

On Thursday, February 9, 1911, one Arthur A. Remillard, the brother-in-law of Mrs. Smith, acting for Mr. Smith, tried to pay the premium at the local office of the said company in Philadelphia. Finding the local agent was not authorized to receive money he went to the office of the Postal Telegraph Company and turned over to them $595.40 plus $9 to pay the transfer

charges and requested them to transmit the money to the defendant company. At the same time Remillard telegraphed the defendant; to-wit,

"Philadelphia, Pa., Feb. 9, 1911.

The Reserve Loan Life Insurance Co.,
900 Odd Fellows Bldg.

I this day telegraph you five hundred and ninety-five dollars and forty cents in payment of note given by Frank H. Smith, for premium on policy No. 25684, issued to Frank H. Smith, and due Feb. 11th, this year. Return note and send receipt for premium to Frank H. Smith, Aldan, Delaware Co., Pa.

"ARTHUR A. REMILLARD."

And after sending the telegram, and within the hour, he wrote and took to the post office, stamped and registered the following letter:

"Postal Telegraph-Cable Company,
"Night Lettergram.
"Philadelphia, Pa. Feb. 9-11.
"Reserve Loan Life Insurance Company,
900 Odd Fellows Bldg.,
Indianapolis, Ind.,
"Gentlemen:—

"I sent you today by the Postal Telegraph Co. five hundred and ninety-five dollars and 40 cents ($595.40) in payment of note given by Frank H. Smith for premium on policy No. 25684 said note maturing Feb. 11, 1911. I exacted a report from the Postal Company of delivery of the message I sent notifying you I forwarded the money and for what purpose.

"Kindly answer at once and return note and also send receipt for premium to Frank H. Smith, Aldan, Delaware Co., Pa., formerly 1532 Arch St.

"Hoping for a prompt reply, I am respy,
"ARTHUR A. REMILLARD,
"Aldan, Delaware Co. Pa."

The money sent by Remillard had an order of waiver of identification, in which case the Telegraph Company testified they would pay in money if so requested.

The testimony shows that on the 9th and 10th of February, 1911, the Telegraph Company notified the defendant company of the arrival of the money to pay the premium, which might be obtained by calling at the office of the Telegraph Company.

Upon the defendant failing to call at the office of said Telegraph Company, after being so notified, Mr. Knight, the cashier of said Telegraph Company, on the 11th of February, 1911, called personally at the office of the defendant and displayed a draft of the Postal Telegraph Company drawn upon its treasurer in New York for the amount of the extension note, $595.40. Knight presented this draft at the cashier's window. The space behind the window was occupied by Miss Dickson, who was authorized to receive collections. The conflicting testimony as to what was said and done on this occasion will be stated later.

On the following Monday, February 13, 1911, Knight again went to the office of the defendant company where he saw Mr. Zulick, its vice-president, and delivered the draft or order to him in the presence of Mr. Deitch and Mr. West (the appellant claims Miss Dickson was also present), Mr. Zulick refused to accept the postal order and testified that he demanded money. Knight testified that the draft or order was returned to him but no demand was made for money.

Mr. Zulick testified that on Saturday at eleven-thirty-nine o'clock he wired Frank H. Smith that he could not send the premium receipt unless the premium note be paid in cash before due, sending the wire over the Western Union.

Mr. Smith was sick at the time the second annual premium fell due, of which the company was informed.

Evidence was introduced by the defendant of the Indiana law governing legal holidays (February 12, 1911, was Lincoln's birthday) and claimed that under such law the note would not mature until Tuesday, February 14, 1911.

The case was tried at the May term, 1915, of the Jackson Circuit Court at Kansas City. A verdict was found in favor of the plaintiff for $9874.83, upon which judgment was rendered. The defendant duly appealed.

## II.

The controlling question on this appeal is whether there was a sufficient tender of payment of the note for a part of the second premium payable on the policy in suit?

Prior to the legal tender acts of 1862 making United States treasury notes a legal tender for all debts public or private not payable in a particular kind of coin or commodity, only gold or silver coin of the realm was a legal tender of payment of private debts. [30 Cyc. 1212.] But before and after these Congressional enactments a tender of bank notes, checks or drafts or orders for the payment of money (if not objected to for failure to produce legal tender money) would not be invalid because not falling within the description of money made legal tender by the Constitution of the United States and the Federal Statutes. [Williams v. Rorer, 7 Mo. 556; Shipp v. Stacker, 8 Mo. 145; Berthold v. Reyburn, 37 Mo. l. c. 595; Beckham v. Puckett, 88 Mo. App. l. c. 639; Thompson v. St. Charles County, 227 Mo. l. c. 234.]

The reasoning of these cases is that the creditor when offered such representatives of legal tender money if he is not willing to accept them as such, should put his refusal on that ground so that the debtor may have the opportunity to secure the specific money which the law prescribes shall be accepted in payment of any

debts express to be payable in dollars. Hence, it is deemed only just that the holder of such an obligation upon tender of the payment thereof in bank notes or such things as represent money in the marts of trade and commerce, shall state expressly the ground of his rejection in order that the debtor may comply with the technical law requiring a tender of a particular kind of money. The non-observance of this duty necessarily misleads the debtor and may inflict a loss which would be avoided if the creditor had stated that he objected to the form and character of the tender. He should therefore be estopped from subsequently urging an objection which he suppressed at the time of the offer if his later insistence thereon would inflict a loss or damage upon a creditor who in reliance on his implied waiver failed to produce the kind of money made a legal tender by law. This thought has been accurately and pithily stated by LAMM, J., viz., ''Who does not speak when he should may not when he would.'' [Thompson v. St. Charles County, supra.]

In the case at bar defendant had actual knowledge two days before the note given to it for part of the second premium on the policy matured; that the money for the full payment thereof had been telegraphed to Indianapolis where its home office was located, for the satisfaction of the note and was requested by wire and letter sent from Philadelphia coincidentally with the transmission of the money to apply the same on said note and return receipt thereof. The defendant was also notified by the forwarder of the money (the Postal Telegraph Company) two days before the maturity of the note that it held the money order for the amount which would be due on the maturity of the note and was requested in said notice to apply for the same. Getting no reply to this written request the forwarding company phoned the office of the defendant stating it held such order for it and received a phone answer

indicating that the matter would be taken up or information given about it. Failing to receive such information the forwarder sent its cashier on the morning of the 11th day of February to the office of the defendant with a draft or order drawn upon the treasurer of the forwarding company for the full amount due on the note. This was displayed to the person at the cashier's window who did not receive it, excusing herself on the ground that the cashier was not in and that she would refer the matter to a Mr. Woodbury. Her account of the matter is, to-wit, "I was only passing. I just referred him at once to Mr. Woodbury and went back to my desk. Mr. Woodbury came forward and I went to the next counter and back to my desk."

The account of this transaction by C. F. Knight, the cashier of the transmitter of the money, was in substance that after unavailing efforts for two days to get definite instructions from defendant as to the money held for it and after repeated notices given, he called in person with a draft in the usual form payable to defendant, upon the New York treasurer and presented the same to the lady occupying the cashier's window, adding, to-wit, "I told her I was from the Postal Telegraph Company with a money order for the Reserve Loan Life Insurance Company for $595.41 from Arthur A. Remillard, Philadelphia." That she walked away and then came back. "When she came back she said that the cashier was not in and that he would take it up and let us know," whereupon he (Knight) returned to his office.

It was shown that this lady had full authority to accept payment of premiums and give receipt therefor. This being the last day upon which the note could be paid according to its terms, Knight, however, appeared with the same draft on the Monday following and handed it to the vice-president of the defendant company. As to what took place at that interview there

is a sharp conflict of testimony. The testimony of the cashier of the Postal Telegraph Company is to the effect that the draft or order which he delivered to the vice-president was handed back to him without any objection to the form of the tender and without any request that money should be produced instead. The testimony of the vice-president, corroborated by others whom he called to witness the interview and a notation upon a memorandum, was to the effect that the vice-president refused to accept the order and demanded the production of money. The evidence was undisputed that the vice-president had received notice from the sender of the money two days before the maturity of the note by letter and wire and that he delayed his reply until the lapse of two days, when, only a few minutes before the maturity of the note, he wired the assured that the note must be paid in cash before he would send a receipt or return it. This belated reply was sent over the wire of another company than that which transmitted the money.

These and other facts adduced on the trial presented issues of fact which were submitted to the jury under appropriate instructions. Upon this conflicting evidence their verdict was in favor of the testimony relied upon by the plaintiff to show an implied waiver on the part of the defendant of the production of the money at the times when the draft or order was presented for payment of the note.

The testimony for the plaintiff leads to the conclusion that the verdict of the jury was supported by evidence affording a legitimate basis for the inference that the defendant intended at all times, after it was informed two days in advance of the maturity of the note that the money to pay it had been transmitted by telegraph, to baffle the efforts which might be made to extinguish that obligation and thereby forfeit the pol-

icy and thus avoid its liability for the death of the insured whose ill health and impecunious condition the record discloses had been brought to the attention of the defendant.

The anxiety to pay this note is manifest from what was done by Mr. Remillard to that end. He appeared at the office in Philadelphia with the money in his possession and was told that it could not be received there but would have to be sent to the home office in Indianapolis. Without risking the delay of the mail and uncertainty of his individual check or draft reaching defendant in time, he at once deposited with the Postal Telegraph Company the entire amount which would be due on the note two days thereafter, with directions to wire it, waiving identification, to the order of defendant at Indianapolis and paid $9 for that method of sending the money. This was immediately done, the defendant was promptly notified both by the telegraph company and by the sender, as has been shown and with the result as has been shown.

In view of this testimony there was substantial evidence to support the verdict of the jury; for upon the theory of the evidence relied upon by plaintiff the transaction was one to which the doctrine of implied waiver of the production of money under the authorities hereinbefore cited is strictly applicable.

We conclude, therefore, that there was no error on the part of the trial court in submitting the issue as to the validity of the tender of payment to the jury.

### III.

Error is claimed as to the instructions. A careful examination of these shows that they were submitted in accordance with the rules of law governing the validity of payment where there is an implied waiver of the production of the money itself.

Some complaint is made as to the evidence adduced tending to show that the draft or order pre-

sented by the Postal Company of Indianapolis to the defendant was bankable in the sense that the banks of Indianapolis would put it to the credit of a holder and permit him to check out the amount thereof. Plaintiff was entitled to make this proof in order to show the commercial value of the paper tendered on her behalf as the representative of money, and she was further entitled to show that the drawer of the order, the Postal Telegraph Company, kept sufficient funds deposited in a bank in Indianapolis to pay this draft or order.

*Evidence.*

It seems to us to be a matter of common knowledge that the transmission of money by telegraph through such companies as the Postal Telegraph and the Western Union Telegraph Company has become well established in modern business in the States of this Union and amongst most civilized nations having dealings with the people of this country; and that such a draft or order, considering its use in certain emergencies requiring the rapid transfer of cash, and the immense resources of the two companies who are engaged in affording that business facility to their customers, would be equally as satisfactory and trustworthy as the cashier's checks of banks or the checks of individuals, and that persons willing to accept these for money would not hesitate to receive the former which has now become a recognized medium of quick exchange of money of such pecuniary value and security that it is accepted by banks on the same basis upon which they receive drafts or cashier's checks of other banks.

The judgment in this case is free from any reversible error and is affirmed. All concur.